**Reynaldo CARRILLO, Jr., Petitioner,**

**v.**

**The STATE of Texas, Respondent.**

**No. B–2984.**

Supreme Court of Texas.

May 24, 1972.

Rehearing Denied June 21, 1972.

**614**

Fred J. Deyeso and Richard T. Haase, San Antonio, for petitioner.

Ted Butler, Dist. Atty., and Lucien B. Campbell and Antonio G. Cantu, Asst. Dist. Attys., San Antonio, for respondent.

GREENHILL, Justice.

Reynaldo Carrillo, Jr., then age 16, was found by a jury to be a delinquent child. He was committed to the Texas Youth Council, but his sentence was probated. He was also ordered by the trial court to work for 40 hours at Joske's, a store in San Antonio.

Reynaldo's counsel contends that Reynaldo was denied due process of law under In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L. Ed.2d 527 (1967), in that Reynaldo was not given fair and timely notice of the charges against him. He complains particularly that the State was permitted to amend its charges against him during the trial in order to fit the evidence which was introduced. The charges with which Reynaldo were served accused him of taking a bottle of cologne from Danny Balli. During trial, an amendment was allowed which charged Reynaldo with taking the cologne from a different person, Grace Casanova. The court also permitted evidence that Reynaldo had taken a box of shotgun shells from Danny Balli, though he had not been so charged. The Court of Civil Appeals affirmed the judgment of the trial court. 470 S.W.2d 227. We reverse.

The evidence is that the house detective of Joske's Las Palmas Store in San Antonio became suspicious of Reynaldo and his male companion, also a minor. She partially hid herself, and she testified that she saw Reynaldo put a bottle of English Leather cologne (retail cost $5) into a "gym bag" and then take a box of shotgun shells (retail cost $2.85). The boys were seized, the police were called, and the charge was filed.

As we understand it, the goods in the various departments at Joske's are under the control and responsibility of different people. The cosmetics department was the responsibility of Grace Casanova, and the sporting goods department was under Danny Balli. It appeared that before the trial, counsel for Reynaldo had attempted to talk to Danny Balli to find out the facts, but he had been unsuccessful. His first conversation with Grace Casanova was during the trial and after the State had been permitted to amend. He then had the opportunity to cross-examine her.

The charge was that Reynaldo took the cologne from Danny Balli, a person who did not own the cologne. This was all he was charged with. During the trial and before the jury, the house detective got into the additional taking of the box of shotgun shells. The State offered and marked box of shells in evidence over the objection of counsel for Reynaldo that there were no pleadings or charges of his taking shotgun shells. The objection was overruled, and the shells were admitted in evidence. By this time, the State was cognizant of the fact that it had not only failed to allege the taking of the shells but that it had been mistaken in alleging that Reynaldo took the cologne from Danny Balli.

Thereupon, the State moved to amend. It sought to amend to accuse Reynaldo with taking cologne from Grace Casanova and shotgun shells from Danny Balli. Counsel for Reynaldo strenuously objected. The court asked counsel for Reynaldo if he were surprised or prejudiced. He insisted that he was.

The court then announced that he would permit the amendment to charge Reynaldo with taking cologne from Grace Casanova. He also allowed the box of shotgun shells to remain in evidence as res gestae.

Having determined to permit the amendment, the court also announced that despite Reynaldo's counsel's statement that he was both surprised and prejudiced, the court was not convinced that Reynaldo and his counsel were prejudiced. Asked if he needed additional time, counsel for Reynaldo asked for a two days' delay. The court, toward the close of the afternoon hearing, gave Reynaldo's counsel until 9:30 the next morning, stating that counsel could get information directly from Grace Casanova who would be the next witness before the court adjourned.

The question of whether and when the State's charges may be amended and the question of fair notice are closely related. This court had before it in State v. Santana, 444 S.W.2d 614 (Tex.1969) two questions: (1) whether in a delinquency trial by jury, it was permissible to have a jury finding of delinquency made upon a "preponderance of the evidence" as in civil trials, or whether there must be a finding "beyond a reasonable doubt"; and (2) whether Santana had been denied due process because the State, before trial, but on the day of the trial, was permitted to amend to change its charges from "assault to rape" to "rape." By a divided court, we upheld the commitment of Santana on both grounds. The Supreme Court of the United States reversed the judgment of this court, but it wrote only upon the question of "preponderance of the evidence" versus "beyond a reasonable doubt." Santana v. State, 397 U.S. 596, 90 S.Ct. 1350, 25 L. Ed.2d 594 (1970). It held that there must be a finding of delinquency "beyond a reasonable doubt."

■ The Court of Civil Appeals in this case understandably attempted to follow our decision in *Santana* on the amendment point upon which the U.S. Supreme Court had not expressed itself. We adhere to our ruling in *Santana* that the strict prohibition against amendment of pleadings applicable in criminal cases is not applicable in juvenile proceedings. Our reason for doing so is that the Texas Legislature has prescribed that juvenile proceedings are to be civil, not criminal, in nature. But, under the language of *Gault* set out below, the amendment must come at such time, and under such circumstances, as to be basically fair to the minor. Otherwise, there is a denial of due process.

In *Gault* the due process standards of adequate and timely notice were set out. That opinion states:

"Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity.'" 387 U.S. 1 at 33, 87 S.Ct. 1428 at 1446, 18 L.Ed.2d 527 at 549.

The court continued,

"It [due process] does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet." 387 U.S. 1 at 33, 87 S.Ct. 1428 at 1447, 18 L.Ed.2d 527 at 550.

■ In *Santana,* the amendment of the pleadings was *before* trial; and counsel for Santana did not claim surprise. Here the amendment occurred after the trial had begun and toward the end of the trial. The tendered amendments included not only a different owner of the property but a separate offense, that of taking additional property. Counsel for Reynaldo insisted that he was surprised and prejudiced; and while the trial judge obviously did not believe him, the amendment was at such a time and under such circumstances as to be prohibited, as a matter of due process, by *Gault.* Accordingly, the judgment of the

trial court, and that of the Court of Civil Appeals, must be reversed.

The problem then arises as to our disposition of the case. The Criminal District Attorney of Bexar County has indicated that his office no longer desires to prosecute Reynaldo, and he brings to our attention the fact that the trial court had already vacated the judgment against Reynaldo. He therefore suggests that the case is moot. He sets out that after the application for writ of error had been filed in this court, the trial court entered an order which, in substance, finds that Reynaldo Carrillo, Jr., had been found to be a delinquent child, had been placed on probation, and "that the welfare of the said child and the interest of the community no longer require [that] he be subject to the jurisdiction of this court and that he should be released from probation:

> "It is therefore ordered, adjudged and decreed . . . that the judgment heretofore entered herein be and the same is hereby vacated, and the said Reynaldo Carrillo, Jr., ordered discharged from the further jurisdiction of this court under and by virtue of the circumstances for which he was adjudged a delinquent child."

Counsel for Reynaldo insists that the trial court could *not* deprive Reynaldo of his right of appeal and the opportunity to prove that the finding of his delinquency occurred at a trial in which Reynaldo was deprived of due process of law. We do not regard the case as being moot.

The United States Supreme Court has held in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), where mootness was urged and rejected, that these collateral effects, e. g., enhancement of punishment, arising from a judgment of conviction require the appellate court, upon appeal, to rule on the correctness of the conviction. If a juvenile's appeal were made moot by compulsory serving of a relatively short sentence, the alleged errors of the trial court would be buried; and the juvenile would have no way to exonerate himself by appeal.

It appears that there are three reasons assigned for mootness in cases such as this: (1) the trial court has entered an order purporting to set aside the finding of delinquency; (2) the minor has served his sentence or has been on probation long enough to be discharged; and (3) the minor has reached, or exceeded, the age of 17 during the appeal. We will deal with each briefly.

1. *The Subsequent Order Vacating the Judgment of Delinquency.*

■ Does the subsequent order of the juvenile court, entered while the case is on appeal, purporting to vacate the judgment of delinquency make this case moot? We think not. In civil cases the general rule is that a trial court judge has no jurisdiction to vacate or change his judgment once the case has been appealed. The appellate courts have plenary jurisdiction over the matter. Ammex Warehouse Co. v. Archer, 381 S.W.2d 478 (Tex.1964).

■ Likewise in criminal jurisprudence, the trial court is without the power to change its judgment once the appellate record is filed in the Court of Criminal Appeals, and all further proceedings in the trial court are suspended until the judgment of the appellate court is received by the trial court. Article 44.11, Code of Criminal Procedure. State v. Klein, 154 Tex.Cr.R. 31, 224 S.W.2d 250 (1949). Thus whether juvenile proceedings are considered either to be civil or criminal in nature, the trial court was without jurisdiction to vacate its judgment during the appeal; and the order has no legal effect.

2. *The Serving of the Sentence.*

■ Is this case moot because the sentence has been served? Again we think not. In the *ordinary civil case,* this Court follows the rule that where the judgment of the trial court has been voluntarily satisfied, such as by paying the money judg-

ment, then the whole case is moot. All judgments and orders are set aside. Employees Finance Co. v. Lathram, 369 S.W. 2d 927 (Tex.1963).

The second judgment of the trial court which purported to discharge Carrillo recited that Carrillo was discharged from probation; i. e., he had served his sentence.

■ It is our view that a minor should have the right to clear himself by appeal. This right should not be removed because the sentence given is so short that it expires before appellate steps can be completed, or the probated sentence is lifted before such time.

The statutes on the trial of juveniles laudably undertake to give juvenile proceedings, at least for the first offense, as little publicity as possible. They also substantially limit the legal consequences of an adjudication of delinquence. They provide that no adjudication should impose any civil disability, that the child shall not be deemed a criminal by reason of being adjudicated a juvenile delinquent, and that the adjudication should not be deemed to be a conviction. The statutes also provide that an adjudication should not operate to disqualify the child from any civil service employment. The statutes do not speak to the question as to the effect of the adjudication on admission to a profession, or even as to the armed services. Nor do the statutes speak to questionnaires to be filled out for private employment or to the right of an employer to refuse to hire an adjudicated "juvenile delinquent." Article 2338–1 § 13(d) and (e).[1] The stigma or collateral penalties may not be insignificant.

In any event, the adjudication does, by statute, carry with it deleterious collateral effects and legal consequences in addition to any stigma attached to being adjudged a juvenile delinquent, as here because of an alleged theft. For example, Article 2338–1 § 15 permits the juvenile court to keep the records of "conviction" and permits other juvenile officers to inspect them. Article 5143d § 33 permits the records of the Texas Youth Council to be used in setting punishment in a future criminal or juvenile case. Article 2338–1 § 15–A permits the juvenile's records to be exhibited to the press when the juvenile is later charged with a felony.

This problem was before the Fourth Circuit in Kemplen v. State of Maryland, 428 F.2d 169 (1970). There a minor was not warned of his rights and was not afforded counsel in a waiver proceeding. He was tried as an adult and had served his sentence before his habeas corpus proceeding could be reached by the fourth circuit. Indeed he had, by then, reached the age of 22. The court held that the petition for habeas corpus was not moot:

"The petitioner is not required to bear the continuing stigma of an allegedly unlawful conviction simply because the legal remedy has been slow in coming. Because of the disabilities and burdens flowing from a conviction, petitioner still has 'a substantial stake in the judgment of conviction,' [Carafas v. La Vallee, 391 U.S. 234 at 237, 88 S.Ct. 1556 at 1559, 20 L.Ed.2d 554] that prevents this appeal from being moot.

"We are informed by counsel that Kemplen, now 22 years of age, has been continuously employed since his release from Patuxent. He has undertaken to augment his scanty education through extensive reading and is characterized by his counsel as 'articulate, polite, and terrified of any possibility of future incarceration.' Even after release Kemplen urged counsel to pursue his appeal 'in the hope that a favorable result would remove the conviction from his record.' Thus, the result that we reach today will apparently mean something to the petitioner and will be more than a mere exercise in judicial futility." 428 F.2d at 171.

---

1. All statutory references are to Vernon's Annotated Civil Statutes.

The other side of the coin is that if the minor exercises his right of appeal and it is determined that he was properly adjudged to be a juvenile delinquent, or that there was no reversible error in his trial, then the provisions of the Legislature that the fact of his adjudication could be used in further juvenile or felony proceedings would be allowed to operate; and the adjudication could properly be taken into consideration in affixing a sentence in any subsequent case.

3. *The Minor Reaches 17 During the Appeal.*

Reynaldo is now 17, and it has been suggested that this fact makes his case moot. When he became 17, the juvenile court lost jurisdiction to determine him to be a juvenile delinquent. Article 2338–1 § 6. Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269 (1944), Stallings v. State, 129 Tex.Cr.R. 300, 87 S.W.2d 255 (1935). Just because the boy reached majority while the case is being appealed should not make the case moot, because as indicated above, this would mean an automatic vacation of a possibly correct judgment of delinquency; and because, as stated, the juvenile should have the right to be exonerated by appeal.

Where the delinquency judgment is reversed, the appellate courts are authorized to dismiss the proceedings and to discharge the minor, or to remand the cause for a new trial if the juvenile is under 17, or for other appropriate proceedings. Article 2338–1 § 21. If the juvenile is 17, then there can be no remand for a new trial because there is no such jurisdiction in the juvenile courts.

Accordingly, since we have found error and Reynaldo Carrillo is now 17, we reverse the judgment of the Court of Civil Appeals, reverse and vacate the judgment of the juvenile court, and the case is dismissed.

Concurring opinion by CALVERT, C. J., in which WALKER, J., joins.

CALVERT, Chief Justice (concurring).

I concur in the judgment rendered, but I disagree with one of the Court's major holdings.

Three events are suggested in the majority opinion as a possible basis for holding this case moot. They are: (1) entry of the trial court's judgment, while this appeal was pending, vacating the original judgment of conviction; (2) attainment by Carrillo of age 17 while the appeal was pending; and (3) complete satisfaction by Carrillo, pending the appeal, of the sentence imposed upon him by the trial court. The majority has held that the case is not rendered moot by any of the three events. I agree that the case is not made moot by either of the first two events, and I agree generally with the reasons given for those holdings; but I disagree with the holding as to the third event. I would hold that the case is now moot by reason of satisfaction by Carrillo of the trial court's judgment.

Inasmuch as I agree generally with the majority's holdings that the first two events do not render the case moot, there is no need to consider those matters further.

In holding that the case is not moot by reason of Carrillo's satisfaction of the sentence imposed upon him, the majority has abandoned long-standing rules of mootness as announced and applied by this Court, the Texas Court of Criminal Appeals and the Supreme Court of the United States.

When the Court of Criminal Appeals concludes that a *case* is moot, *it dismisses the appeal,*[1] thus leaving a judgment of conviction in effect with whatever detrimental collateral legal consequences or moral stigma may result therefrom. See Ex Parte Putnam, 456 S.W.2d 916 (Tex.

---

1. Emphasis mine except where otherwise indicated.

Cr.App.1970) (". . . appellant is not confined and *the question raised by his appeal* has become moot. . . . The appeal is ordered dismissed." ); Gates v. State, 332 S.W.2d 333 (Tex.Cr.App.1960) ("The fine has been satisfied, the jail term served, and the term of court ended. This Court *has no jurisdiction to entertain such appeal*."); King v. State, 379 S.W.2d 907 (Tex.Cr.App.1964) (". . . appellant died . . . after having perfected his appeal. The death of the appellant deprives this court of jurisdiction of the appeal.").

The Supreme Court of the United States follows the same course of action as our Court of Criminal Appeals, once it has concluded a *case* is moot. *It dismisses the appeal* in a moot case, St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943); but, unlike the Court of Criminal Appeals, it will not hold that a criminal case is moot if a judgment of conviction left standing may continue to have detrimental collateral *legal* consequences. See Sibron v. New York, 392 U. S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

When this Court concludes that a case is moot, it sets aside all orders entered in the case by lower courts, including the original judgment, and dismisses the case. This has been the course of action followed by this Court in a moot case for at least 94 years. See Lacoste v. Duffy, 49 Tex. 767 (1878); McWhorter v. Northcutt, 94 Tex. 86, 58 S.W. 720 (1900); Danciger Oil & Refining Co. v. Railroad Commission, 122 Tex. 243, 56 S.W.2d 1075 (1933); Tarpley v. Epperson, 125 Tex. 63, 79 S.W.2d 1081 (1935); Texas & N. O. R. Co. v. Priddie, 127 Tex. 629, 95 S.W.2d 1290 (1936); State v. Society for Friendless Children, 130 Tex. 533, 111 S.W.2d 1075 (1938); Iles v. Walker, 132 Tex. 6, 120 S.W.2d 418 (1938); Taylor v. Nealon, 132 Tex. 60, 120 S.W.2d 586 (1938); City of West University Place v. Martin, 132 Tex. 354, 123 S.W.2d 638 (1939); Freeman v. Burrows, 141 Tex. 318, 171 S.W.2d 863 (1943); Texas Foundries v. International Moulders & F. Wkrs., 151 Tex. 239, 248 S.W.2d 460 (1952); Poole v. Giles, 151 Tex. 224, 248 S.W.2d 464 (1952). The course of action followed by this Court in a *moot case* thus leaves standing no judgment of any kind which can have any detrimental direct or collateral *legal* consequences. A judgment set aside for mootness is just as effectively denuded of collateral legal consequences as is a judgment set aside because of error committed during trial.

The basis for the decisions of the Supreme Court of the United States that it will not decide questions in moot cases is that the Court has no constitutional jurisdiction or power to "decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it." St. Pierre v. United States, 319 U.S. 41, 42, 63 S.Ct. 910, 911, 87 L.Ed. 1199 (1943). And see Powell v. McCormack, 395 U.S. 486, note 7 at 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), and North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). So it is with this Court. Once we find that a juvenile has satisfied a trial court's delinquency judgment, and we thus set the stage for wiping out the judgment of conviction and dismissing the case for mootness, any holding we may make in deciding questions concerning validity of the trial and judgment will be nothing more nor less than advisory opinions on abstract questions of law which this Court, like the Supreme Court of the United States, is constitutionally precluded from giving. See Firemen's Ins. Co. of Newark, New Jersey v. Burch, 442 S.W.2d 331 (Tex.1968); United Services Life Insurance Company v. Delaney, 396 S.W.2d 855 (Tex.1965); Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641 (1933).

This Court established a realistic test of mootness many years ago in McNeill v. Hubert, 119 Tex. 18, 23 S.W.2d 331, 333 (1930), in this language:

"*A case becomes moot when* it appears that *one* seeks to obtain a judgment upon

some pretended controversy when in reality none exists, or when he *seeks judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy."*

The test thus adopted has virtual universal approval. See 27A Words and Phrases pp. 142–153. This test precludes the majority holding that a juvenile delinquency case in this State is not moot even though the judgment has been fully satisfied. The holding that the trial court erred in permitting amendment of the complaint against Carrillo cannot have any practical direct or collateral legal effect upon the existing controversy, and it is nothing more than an advisory opinion.

The foregoing test of mootness established by this Court is harmonious with the test established and followed by the Supreme Court of the United States. In the very recent case of North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413–414 (1971), the Supreme Court reemphasized some of its rules for determining mootness. The Court repeated a holding made in Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L. Ed. 617 (1937), by saying:

> "To be cognizable in a federal court, a suit 'must be definite and concrete, touching the legal relations of parties having adverse legal interests. *It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character*, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' "

Once it is conceded, as surely it must be, that there can be no detrimental direct or collateral legal consequences to the juvenile from a holding of mootness, the only reason suggested by the majority for abandoning our general rule of mootness is that the appellate courts should be allowed to affirm a judgment of conviction so that the juvenile *cannot* get rid of the judgment and of its collateral legal consequences. I am not persuaded, giving proper weight to all relevant considerations, that the reason justifies the departure. Once a juvenile has paid the penalty of a delinquency judgment and it has thereby accomplished its major purpose, it should be a matter of minor judicial concern that he may escape detrimental collateral legal consequences.

The majority opinion seems to suggest that the Court should decide the question presented in the appeal in order to remove the stigma of the conviction. The Supreme Court of the United States and this Court have both spoken to this question.

In St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943), the Supreme Court, writing in a criminal case in which the penalty had been fully discharged, and holding the case moot, said: ". . . But the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review. Since the case is moot, the writ will be *Dismissed*." [2] Some of the holdings in *St. Pierre* are explained or questioned in subsequent Supreme Court decisions, but I have found no case in which the Court has held that mere moral stigma of a judgment which has been satisfied will prevent mootness. Indeed, in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Court said that *St. Pierre* "must be read in light of later cases to mean that a criminal case is moot only if it is shown that there is no possibility that any collateral *legal consequences* will be imposed on the basis of the challenged conviction." 392 U.S. 40, 88 S. Ct. 1889.

The majority opinion cites Kemplen v. State of Maryland, 428 F.2d 169 (4th Cir. 1970) as reaching a conclusion contrary to that of the Supreme Court in *St. Pierre*. Two things about that opinion should be noted: (1) It is surely entitled to less weight than the opinion of the Supreme

2. Emphasis the Court's.

Court on an identical question, and (2) as appears from the face of the opinion, the Court was speaking in context of the Federal mootness rule, heretofore noted, of *dismissing the appeal and leaving the judgment of conviction standing.* That result does not follow under the rule adopted by this Court.

This Court faced the stigma question in Employees Finance Company v. Lathram, 369 S.W.2d 927, 930 (Tex.1963). In that case a jury found that certain finance companies had used unreasonable collection efforts to collect loans from a borrower, and awarded damages in the sum of $1900. Employees Finance appealed from the judgment, but another of the companies paid and discharged the judgment. Just as in this case, the appellant assigned on appeal only errors which, if sustained, authorized only a reversal and remand for a new trial. We rejected a plea that we should, nevertheless, pass on the questions presented in order to remove the stigma of the judgment, held the case to be moot, and said:

> "The judgment properly to be rendered is one reversing the judgment of the Court of Civil Appeals in this severed cause and ordering it dismissed. [Cases cited.] *The stigma of the judgment in this severed cause is thus removed."*

The majority seem to be primarily concerned with affording an adjudged delinquent an opportunity to establish his innocence of delinquency charges. ("If a juvenile's appeal were made moot by compulsory serving of a relatively short sentence, the alleged errors of the trial court would be buried; *and the juvenile would have no way to exonerate himself by appeal. . . .* It is our view that *a minor should have the right to clear himself by appeal. . . .*"). Aside from the fact that the majority treat this Court's rule of mootness as one *of the appeal* rather than one *of the case,* a reversal for procedural error cannot "exonerate" or "clear" the juvenile; it can only relieve him of the consequences of the prior judgment of conviction, a result

which is fully accomplished by adhering to our practice of *mooting the case.* Moreover, in cases in which the juvenile has not attained age 17 at the time a reversal for procedural error is ordered, our only authority for directing dismissal of the case *is because it has become moot* by virtue of satisfaction of the judgment. Under neither the majority approach nor the "mootness" approach can a juvenile be found not guilty of a criminal charge.

Putting all legal concerns and technicalities aside, there is sound practical reason for applying our long-standing rule of mootness in cases of this type. Once the majority opinion in this case becomes the law, courts of civil appeals and this Court will be constantly besieged to rule on a multitude of questions of irregular procedure, erroneous admission or exclusion of evidence, misconduct of counsel or the jury, etc.; and if we must rule on them for reversal, we must also rule on them for affirmance. This, it seems to me, will lead to rather ridiculous situations in which none of such rulings can have any effect whatever on the legal rights of the juvenile. What difference can it possibly make to the juvenile whether his judgment of conviction of crime, completely satisfied, is wiped out because the trial court committed some technical procedural error or because the case is moot? What difference can it possibly make to him if at some future time he is required to state that he was tried and convicted of crime but the judgment was vacated because of mootness, in the one instance, or that it was vacated because of the erroneous receipt of evidence in the other? In neither instance did the judgment ever become final; and so, in neither instance was the juvenile ever adjudged to be guilty of crime or to be delinquent.

I would hold this case moot and would, for that reason, set aside all orders of the lower courts, including the trial court's judgment of delinquency, and would dismiss the case. Such a holding would be supported by Lee v. State, 425 S.W.2d 698

(Tex.Civ.App.—San Antonio 1968, no writ), the only case squarely in point and, I think, correctly decided.

WALKER, J., joins in this concurring opinion.