TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00419-CV







Donald J. Barnes, Individually and In His Representative Capacity of Voice for Animals, 

and the Animal Protection Institute, Appellants



v.



Texas Tech University, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 99-04564, HONORABLE JOSEPH H. HART, JUDGE PRESIDING







 Appellant Donald J. Barnes appeals the district court's order granting appellee
Texas Tech University's Plea to the Jurisdiction and Motion to Dismiss. After a hearing in which
the district court considered only argument and received no evidence, the court held that (1) Texas
Tech had not waived its sovereign immunity, and (2) Barnes had no standing. Barnes complains
on appeal that the district court erred in its holdings. Texas Tech has filed in this Court a Motion
to Dismiss Appeal for Mootness. Because we hold this cause is moot, we will affirm the trial
court's order of dismissal.


FACTUAL AND PROCEDURAL BACKGROUND

 In 1997, the Texas Legislature passed the Texas Fire Ant Research and
Management Plan. The legislature allocated $2.5 million per year to support research, education,
and regulatory programs conducted at Texas A&M University (the Texas Agricultural Experiment
Station and the Texas Agricultural Extension Service), Texas Tech University, the University of
Texas at Austin, and the Texas Department of Agriculture. The purpose of the research was to
develop a cost-effective, longer-lasting, and environment-friendly method of managing the fire
ant population in Texas. Additionally, no research had yet been conducted on the impact of fire
ants on white-tailed deer fawns. (1) In September 1997, Texas Tech University began its study to
investigate the impact of fire ants on the activity patterns of white-tail deer fawns.

 In April 1999, Barnes brought suit against Texas Tech to enjoin the continuation
of the white-tailed deer project on the grounds that it constituted cruel treatment of animals, lacked
a valid scientific basis, and deprived appellants of their right to enjoy the natural wildlife within
the state of Texas. Moreover, Barnes claimed he had been personally injured by the distress he
endured as a result of the pain and suffering of the deer. Barnes brought suit on his own behalf
and as a representative of two organizations, Voice for Animals and the Animal Protection
Institute. Barnes alleged that the treatment of the deer during both their capture and their captivity
violated the statutory prohibition against cruelty to animals because the research was not bona fide
experimentation for scientific research. (2) Additionally, Barnes claimed his cause of action fell
within the Texas Tort Claims Act (3) because some of the deer were injured by the helicopters and
trucks used to transport them and by the holding pens used to confine them, all of which were
under the control of Texas Tech.

 Texas Tech invoked sovereign immunity and challenged Barnes's standing to sue. 
Barnes argued that because Texas Tech had violated the Tort Claims Act, it had waived its
sovereign immunity. Moreover, Barnes claimed that Voice for Animals and the Animal
Protection Institute had associational standing to sue because they are members of an organization
whose sole purpose is to ensure the humane treatment of animals. See Texas Ass'n of Bus. v.
Texas Air Control Bd., 852 S.W.2d 440, 446-47 (Tex. 1993). After a hearing, the district court
dismissed Barnes's claims, concluding that Texas Tech had not waived sovereign immunity and
that Barnes did not have standing to sue.

 All fieldwork for the challenged study was concluded in July 1999, and as of
September 1, 1999 custody of the deer had been transferred to Texas A&M University.


DISCUSSION


 Texas Tech argues that because the research project that is the subject of Barnes's
suit has been completed and the deer safely transferred to the custody of Texas A&M, the cause
is now moot. Texas Tech argues that the study, which was completed in 1999, was to be
conducted over a two-year period with no intention of further studies. Because we hold this case
should be dismissed for mootness, we do not reach appellant's two points of error.


 Appellate courts may only determine cases in which an actual controversy exists. 
See Camarena v. Texas Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988); University
Interscholastic League v. Buchanan, 848 S.W.2d 298, 304 (Tex. App.--Austin 1992, no writ). 
In general, a case becomes moot when the issues presented are no longer "live" or the parties lack
a legally cognizable interest in the outcome. See United States Parole Comm'n v. Geraghty, 445
U.S. 388, 396 (1980). The appellate court's judicial power does not include giving advisory
opinions. See General Land Office v. Oxy U.S.A., Inc., 789 S.W.2d 569, 570 (Tex. 1990). 
Because the study has ended, this cause is moot unless one of the two exceptions to the mootness
doctrine applies: (1) "capable of repetition, yet evading review," and (2) collateral consequences. 
See id. at 571. We find that neither exception applies to this cause. (4)

 The United States Supreme Court has applied the "capable of repetition, yet
evading review" exception where: "(1) the challenged action was in its duration too short to be
fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that
the same complaining party would be subjected to the same action again." Weinstein v. Bradford,
423 U.S. 147, 149 (1975). In order to satisfy the Weinstein test, Barnes must show that there is
a reasonable expectation or a demonstrated probability that the same controversy will recur
involving the same parties. See Murphy v. Hunt, 455 U.S. 478, 482 (1982). Therefore, a mere
theoretical possibility is not sufficient to satisfy the Weinstein test. (5)

 Barnes argues that we should not dismiss his case as moot because Texas Tech has
demonstrated an intent to undertake further studies and therefore the actions challenged are
capable of repetition, yet would still evade review. He urges that Texas Tech's now-completed
study was a "preliminary" study, and therefore further studies are anticipated. There is no
evidence in the record, however, to support Barnes's contention that Texas Tech will resume or
repeat the study. Moreover, there is no evidence to show that a subsequent study would be of
such a short duration that Barnes would not be able to fully litigate his claims before completion
of the study. The study challenged here began in September 1997, yet Barnes did not file his
original petition requesting a temporary restraining order until April 19, 1999, less than five
months before completion of the two-year study. Barnes had ample time to seek relief in the
district court, and it was his delay, not the duration of the study, that has caused this action to
become moot.


CONCLUSION

 Because the challenged study is now complete and we do not believe the cause
comes within the "capable of repetition, yet evading review" exception to the mootness doctrine,
we hold this cause is moot and we lack jurisdiction to hear this appeal. Ordinarily, when a case
becomes moot the appellate court must dismiss the cause, not just the appeal. See City of Garland
v. Louton, 691 S.W.2d 603, 605 (Tex. 1985). In this action, however, the trial court order
dismissed the cause, albeit on different grounds from mootness. Accordingly, we believe the
proper disposition is to affirm the trial court's order dismissing the cause.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: February 25, 2000

Do Not Publish

1. According to the study, a survey conducted during the 1981-1982 hunting season found
that 75% of hunters hunted white-tailed deer and spent a total of $84 million on deer hunting leases. 
Moreover, the study estimated that the total contribution of white-tailed deer to rural land values
in Texas was approximately $4.2 billion.
2. Tex. Penal Code Ann. § 42.09 (West Supp. 2000).
3. Tex. Civ. Prac. & Rem. Code Ann. § 101.001-.109 (West 1997 & Supp. 2000).
4. The collateral consequences exception does not apply because it pertains only to severely
prejudicial events the effects of which continue to stigmatize helpless or hated individuals long
after the unconstitutional judgment has ceased to operate. Examples of actions coming within the
"collateral consequences" exception include being wrongfully convicted of a crime, wrongfully
declared a juvenile delinquent, or wrongfully committed to a mental institution. See State v.
Lodge, 608 S.W.2d 910, 912 (Tex. 1980); Spring Branch I.S.D. v. Reynolds, 764 S.W.2d 16,
19 (Tex. App.--Houston [1st Dist.] 1988, no writ).
5. This doctrine has generally been limited to challenges to unconstitutional conduct by the
government. See, e.g., Lodge, 608 S.W.2d at 912 (unconstitutional mental commitments after the
complaining party has been released); Carrillo v. State, 480 S.W.2d 612, 614 (Tex. 1972)
(unconstitutional adjudication of juveniles); Iranian Muslim Org. v. City of San Antonio, 615 S.W.2d
202, 209 (Tex. 1981) (unconstitutional prior restraints on speech). We will assume for the sake of
argument that the doctrine also extends to the claims asserted by Barnes.


982). Therefore, a mere
theoretical possibility is not sufficient to satisfy the Weinstein test. (5)

 Barnes argues that we should not dismiss his case as moot because Texas Tech has
demonstrated an intent to undertake further studies and therefore the actions challenged are
capable of repetition, yet would still evade review. He urges that Texas Tech's now-completed
study was a "preliminary" study, and therefore further studies are anticipated. There is no
evidence in the record, however, to support Barnes's contention that Texas Tech will resume or
repeat the study. Moreover, there is no evidence to show that a subsequent study would be of
such a short duration that Barnes would not be able to fully litigate his claims before completion
of the study. The study challenged here began in September 1997, yet Barnes did not file his
original petition requesting a temporary restraining order until April 19, 1999, less than five
months before completion of the two-year study. Barnes had ample time to seek relief in the
district court, and it was his delay, not the duration of the study, that has caused this action to
become moot.


CONCLUSION

 Because the challenged study is now complete and we do not believe the cause
comes within the "capable of repetition, yet evading review" exception to the mootness doctrine,
we hold this cause is moot and we lack jurisdiction to hear this appeal. Ordinarily, when a case
becomes moot the appellate court must dismiss the cause, not just the appeal. See City of Garland
v. Louton, 691 S.W