COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





IN THE MATTER OF S.J.C., A
JUVENILE.


 
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-08-00284-CV



Appeal from the


65th District Court


of El Paso County, Texas


(TC# 08,00075)


O P I N I O N


 In this juvenile proceeding, the child's mother appeals a finding that she contributed to her
son's delinquency, urging that the evidence was insufficient to support that conclusion. The State
initially responded on the merits. In a supplemental brief, the State now urges that this issue is moot,
as the juvenile has completed his term of probation. Finding that the issue falls within the collateral
consequences exception to the mootness doctrine, we address the merits of the appeal. We conclude
that the evidence is legally insufficient to support the challenged finding, and we therefore reverse
the judgment as to that finding only.

FACTS


 S.J.C. was charged by petition with engaging in delinquent conduct in the form of marking
with indelible marker on a bathroom sink, mirrors and tile walls in violation of Tex. Pen. Code
Ann. § 28.08. An attorney was appointed to represent the child, and with his attorney's concurrence
the child agreed to a hearing before the juvenile court referee without a jury. The child pleaded true
to committing the offense of graffiti misdemeanor both in open court and by written waiver,
stipulation and admission.

 In her predisposition report, juvenile probation officer Dora Rodarte noted that the child's
mother was a substitute teacher for El Paso I.S.D., and the father had not been in contact with the
child for many years. The mother has no criminal history. She attended a PEACE meeting on
August, 11, 2008. The child participated in school band and swim team and attended church with
his mother on Wednesdays and Sundays. He had no curfew because he rarely went out, but when
he did his mother would drive him to and from the event. It was the probation officer's opinion that
the mother had not contributed to the child's delinquent behavior, as the mother made sure the
juvenile was involved in positive activities and maintained contact with school officials. The officer
noted that the delinquent behavior was attributable to negative associations and peer pressure.

 A disposition hearing was held on August 27, 2008, before juvenile court referee Richard
Ainsa. The predisposition report was entered in evidence at the hearing. Officer Rodarte testified
that she believed that the child was in need of rehabilitation, and recommended that he be placed on
supervised probation with a 5 p.m. curfew until he turned 18, with a review hearing in four months. 
Rodarte testified that the child had committed the grafitti offense because he wanted to be accepted
into the "Crazy Azz Tagging Crew" (which she noted was not a gang). At home, the child's mother
reported no problems with the child other than some "talking back" the year before, which was no
longer a problem. The child complied with his mother's rules and did chores such as pulling weeds,
cleaning his room and throwing out trash. Sometimes he would question these rules, but he did
comply. Officer Rodarte further stated that the mother was able to provide proper control and
supervision. She did not believe that the mother had contributed to the delinquency.

 Officer Rodarte further testified that, in a conversation before the hearing, she had
recommended to the mother that she be evaluated at El Paso MHMR, and the mother responded that
if she was going to go then the child had to go too. Ms. Rodarte asked if there were any problems,
to which the mother replied, "Well, I'm the mother and there are a lot of problems." Upon hearing
that statement, the mother (in the courtroom but not on the witness stand) stated, "No, I didn't say
that." The referee admonished her not to speak out of turn. Later in Rodarte's testimony, she
explained her reason for recommending that the mother attend counseling:

 The reason for this was that during the interview, the juvenile was fine, we talked,
he was very open. However, when I spoke to the mother, when I interviewed her, she
seemed to be-I was a little concerned that maybe she was a little depressed. She was
crying a lot about what had happened, stated that why were we opening up the case
again, that we were going to break up her family. I told her to calm down and that
everything would be okay because [the juvenile] appeared fine.


 I was a little concerned also when I went to the home because it is a three bedroom
home, two bath, however, they only use one of the bedrooms because the home has
a lot of things, you know, stacks of books, clothes. She did indicate that she was
trying to have a garage sale. 

 The juvenile's mother also testified at the disposition hearing. She explained that the child
had a hard time in 2007 when they had moved to Nevada for a year. She also discussed her
depression-as a teacher she is required to issue referrals on kids, and it was hard for her to accept
that her own son was in trouble at school. She did not understand that the process would require
her to come to court, and she had never been involved in anything like this before. The referee
reassured her, saying, "Well, you didn't do this. You didn't do it so you shouldn't be upset about
it." Upon questioning, she stated that she was willing to see a counselor. In the judgment of
probation, the court placed the juvenile on probation and also found that the child's mother, by
willful act or omission, had contributed to, caused, or encouraged the child's delinquent conduct, and
ordered her to participate in the juvenile's rehabilitation.

 Some time after the hearing, but still on the same day, the case went back on the record
because the mother and juvenile had refused to sign a copy of the referee's recommendations after
having been ordered to do so. The juvenile had been returned to school by this time, but the mother
was present (1) and the referee told her: "[Y]ou're going to have to sign it [the recommendations] or
you're going to go to the county jail." The following exchange then occurred:

 The Mother: Sir, I'm not refusing to sign it. What you-hopefully it was recorded in
the hearing this morning. You had mentioned that I was not-I had not contributed
to his delinquency. What you said and what she has written in the papers are not in
agreement. Her paper reads that I have. So, therefore, for that reason, I -

 

 The Court: I didn't comment on the record.

 

 The Mother: I have asked her to go ahead and have you fix that.

 

 The Court: No, because I didn't-.

 

 The Mother: What you said-

 

 The Court: Ms. Valdez, I didn't make that finding on the record, and whatever is in
my Order-

 

 The Mother: You mentioned it. Was it-was it recorded earlier?

 

 The Court: Do you remember anything about me mentioning that?

 

 Officer Rodarte: I don't know if you said it, Your Honor. I did say that we had not
found that.

 

 The Court: It was your recommendation.

 

 Officer Rodarte: Right.

 

 The Court: That's not my finding.

 

 Officer Rodarte: However, I explained to her that that was based on what she
reported to me at the interview. However, right before we walked in and I told her
about the evaluation that I was going to have her submit to, she said that there was
issues and that she would not turn her son in, therefore, she was not truthful with me
in the interview.


 The Mother: Well-

 

 The Court: No, ma'am. You listen to me. That's her recommendation. I don't have
to follow it, and I didn't follow it. I found that you contributed to the delinquency
of your son. So that's my finding. If you don't like it, your remedy is to appeal my
judgment. I'm not going to change it. So you either sign that acknowledging that
you received the judgment or you're going to go to the county jail. If you don't like
what it says in there, you're free to appeal it. You have a certain amount of time after
today to appeal it to another court to have it reviewed.

 

 . . .


 

 The Court: Ma'am, I didn't say anything. I didn't say anything because I didn't
agree with her recommendation, and I made a finding in there that you did contribute.

 

 The Mother: Now you're changing your story.

 

 The Court: No.

 

 The Mother: Yes.

 

 The Court: Ms. Valdez, you're going to make me lose my patience. You either sign
it or you're going to the county jail.

 

 The Mother: It doesn't matter. Do what you will with me. It doesn't matter to me.

 

 The Court: Then the Court's finding you in contempt of court. You'll remain in the
county jail until you sign it. You'll sit there as long as it takes until you sign that.

 

 The Mother: Whatever.

 

 The Court: All right. Take her into custody.

 

 The Mother: Good job, Dora.

 

Still later, the referee brought the mother and juvenile back into the courtroom and presented them
with a copy of the judgment of probation on the record. He then released the mother from custody. 
 A review hearing was held on January 7, 2009, at which time the juvenile's probation was
terminated.

MOOTNESS


 We first address the State's argument that because the juvenile's probation has been
terminated, the single issue before us is moot and we should dismiss this appeal.

 When the judgment of this Court can have no effect on an existing controversy, a case
becomes moot. In the Matter of G.E., 225 S.W.3d 647, 648 (Tex. App.-El Paso 2006, no pet.). A
case is moot when the issues presented are no longer live or the parties lack a legally cognizable
interest in the outcome. In the Matter of R.M., Jr., 234 S.W.3d 103, 104 (Tex. App.-El Paso 2007,
no pet.) In both the G.E. and R.M. cases, this Court held that where a juvenile's probation had been
terminated before submission of the appeal, and where the appeal concerned only disposition orders, 
not the adjudication of delinquency itself, the appeals were moot. R.M. Jr., 234 S.W.3d at 105; G.E.
225 S.W.3d at 648. This appeal also concerns the court's disposition order, not the adjudication of
delinquency. This juvenile pleaded true to a single allegation, which is not challenged here. 
Therefore, unless some exception to the mootness doctrine applies, we are constrained to find that
there is no live controversy and the appeal is moot.

 There are two exceptions which will allow an appellate court to address issues that are
otherwise moot: (1) capable of repetition yet evading review; and (2) collateral consequences. 
General Land Office of the State of Texas v. OXY U.S.A., Inc., 789 S.W.2d 569, 571 (Tex. 1990);
R.M., Jr., 234 S.W.3d at 104. In order to invoke the "capable of repetition yet evading review"
exception, the appellant must show that: (1) the challenged action was too short in duration to be
litigated fully before the action cease or expired; and (2) a reasonable expectation exists that the
same complaining party will be subjected to the same action again. R.M. Jr., 234 S.W.3d at 104. 
We think that the first prong of this test is met here. The child's disposition hearing was held on
August 27, 2008. The issues of indigency and appointment of counsel were addressed during the
pendency of the appeal. The court reporter asked for a single 30-day extension for filing the record;
both Appellant's counsel and the State requested 45-day extensions for filing their briefs. All
extensions were granted. Thus, it has been over a year since the disposition hearing, although no
party to the appeal can be faulted for undue delay. We note that the termination of juvenile probation
before submission on appeal is apparently quite common, as this Court has issued three opinions on
very similar circumstances in the recent past. In the Interest of D.R.Z., No. 08-07-00306-CV, 2009
WL 1360894, at *2 (Tex. App.-El Paso May 13, 2009 no pet.); R.M. Jr., 234 S.W.3d at 105; G.E.
225 S.W.3d at 648.

 Nevertheless, we think the Appellant cannot meet the second prong of this exception,
requiring a showing that the same complaining party will be subjected to the same action again. 
Even if S.J.C. is subject to another juvenile proceeding before his eighteenth birthday, the facts and
circumstances of that proceeding will be different, requiring different proof and findings. We
therefore conclude that the "capable of repetition yet evading review" exception to mootness does
not apply.

 The "collateral consequences" exception applies to severely prejudicial events, the effects
of which continue to stigmatize helpless or hated individuals long after the challenged judgment has
ceased to operate. R.M. Jr., 234 S.W.3d at 104. The Supreme Court has applied this exception in
juvenile cases where the adjudication of delinquency is challenged, reasoning that such a judgment
has a number of collateral consequences. Carrillo v. State, 480 S.W.2d 612, 616-17 (Tex. 1972). 
 These consequences include the retention of the adjudication by the court and juvenile officers, the
use of such records in assessing future punishments, and the publishing of the juvenile record in the
event the individual is later charged with a felony. Id. The exception generally does not apply where
only some aspect of the court's disposition is challenged (usually the terms and conditions of
probation), as a resolution of disposition issues on appeal could not impact the collateral effects and
legal consequences of being adjudged a juvenile delinquent. D.R.Z., 2009 WL 1360894, at *1; R.M.
Jr., 234 S.W.3d at 105; In the Matter of L.S., No. 04-07-00751-CV, 2008 WL 2923855, at *2 (Tex.
App.-San Antonio July 30, 2008, no pet.).

 The issue before us here is neither the adjudication of delinquency, which would clearly be 
covered by the collateral consequences exception, nor purely an issue of disposition, which would
clearly be moot. Rather, we are asked to review the juvenile court's finding that a parent contributed
to her son's delinquency, which we believe presents different questions. We have been unable to
find any cases addressing this particular issue, and therefore we address it as one of first impression. 

 Normally, in order to invoke the collateral consequences exception, appellant must show
both: (1) a concrete disadvantage has resulted from the judgment; and (2) the disadvantage will
persist even if the judgment is vacated and the cause dismissed as moot. Marshall v. Housing
Authority of City of San Antonio, 198 S.W.3d 782, 788-89 (Tex. 2006). Usually, when a case
becomes moot during appeal, this Court will vacate the underlying judgment. See D.R.Z., 2009 WL
1360894, at *2; G.E., 225 S.W.3d at 648-9; Hanna v. Godwin, 876 S.W.2d 454, 457 (Tex. App.-El
Paso 1994, no writ). This prevents prejudice to the rights of the parties when appellate review is
precluded by reasons other than the voluntary acts of the parties. Marshall, 198 S.W.3d at 788-89. 
Once the judgment is vacated and the case dismissed, collateral consequences of the judgment are
ordinarily negated to the same extent as if the judgment were reversed. Id. at 789. In juvenile cases,
however, we have consistently declined to vacate the entire cause, as aspects of the judgment remain
that are not moot. See G.E., 225 S.W.3d at 648-49; R.M. Jr., 234 S.W.3d at 105. As we will not
dismiss the underlying cause in this case, we need not examine the second prong of the test; rather
we need only find that a concrete disadvantage has resulted from the judgment. For the following
reasons, we conclude that the finding that a parent has contributed to the delinquency of her minor
child satisfies this test.

 In its Carrillo opinion, the Supreme Court rejected the argument that adjudication of
delinquency should be considered moot when probation had been discharged, noting that "a minor
should have the right to clear himself by appeal. This right should not be removed because the
sentence given is so short that it expires before appellate steps can be completed." Carrillo, 480
S.W.2d at 617. This, even though juvenile proceedings are subject to "as little publicity as possible,"
impose no civil liability on the child, and insure that the child shall not be deemed a criminal nor the
adjudication be deemed a conviction. Id. The adjudication will not disqualify the child from civil
service employment. Id. Nevertheless, there were aspects of an adjudication that constitute a stigma
or collateral penalty: an adjudication of delinquency could effect admission to a profession, the
armed services or private employment. Id. Moreover, other legal consequences accrue with an
adjudication including consideration upon setting punishment for future criminal or juvenile cases,
and publication of the record if the juvenile is later charged with a felony. Id.

 In our opinion, the finding that a parent has contributed to a child's delinquency is more like
one challenging an adjudication of delinquency than one challenging a term of probation. Regarding
legal consequences, once the juvenile court has found that a person, by wilful act or omission, has
contributed to, caused or encouraged a delinquent child's delinquent conduct, the court may: (1)
enjoin all contact with the child; (2) order a person living in the household to participate in
counseling; (3) pay for the child's treatment program; pay restitution; and (4) attend a program under
the education code. Tex. Fam. Code Ann. § 54.041 (Vernon 2008). Here, the court ordered the
mother to attend family counseling, pay numerous fees, pay restitution and provide the probation
department with the child's school records. These are clearly legal consequences that would not
exist absent the challenged finding.

 More importantly, we believe a serious social stigma is attached to a finding that a parent has
contributed to her child's delinquency. Indeed, until 1995, contributing to the delinquency or
dependency of a child was a stand-alone crime. Acts 1995, 74th Leg., R.S., ch. 1024, § 26, 1995
Tex. Gen. Laws 5095, 5105, eff. Sept. 1, 1995; see Axelrod v. State, 764 S.W.2d 296, 298-99 (Tex.
App.-Houston [1st Dist.] 1988), pet. dism'd, 789 S.W.2d 594 (Tex. Crim. App. 1990); James v.
State, 635 S.W.2d 653, 654 (Tex. App.-Fort Worth 1982, no pet.). Even though the finding here
carries no criminal sanctions, we believe it is nevertheless a charge going to the heart of a parent's
societal role. (2)

 Finally, we note that the juvenile referee specifically told the mother that her remedy, if she
did not like his decision, was to appeal to this Court. She has properly brought an appeal, and we
believe that there are consequences attendant to the finding that require us to apply the collateral
consequences exception to mootness here. We therefore turn to the merits of Appellant's challenge,
whether there is sufficient evidence to support the referee's finding that the mother contributed to
the delinquency of her son.

SUFFICIENCY OF THE EVIDENCE


 A trial court's findings are reviewable for legal and factual sufficiency in the same way as
are a jury's answers to questions in a charge. In the Matter of J.K.R., No. 08-03-00406-CV, 2004
WL 805004, at *3 (Tex. App.-El Paso April 15, 2004, no pet.). To determine whether the evidence
is legally sufficient, we consider only the evidence and inferences that support the trial court's
findings and disregard all evidence and inferences to the contrary. The evidence is legally sufficient
if more than a scintilla of evidence supports the challenged finding. Id. To determine whether the
evidence is factually sufficient, we consider all the evidence to determine whether the challenged
finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. 
Id. Here, the Appellant does not specify whether she is making a legal or factual sufficiency
challenge, and she cites authority setting out the standards of review for both. We therefore assume
that both legal and factual sufficiency challenges are intended.

 With regard to legal sufficiency, we examine only the evidence supporting the finding that
the mother contributed to her son's delinquency. We find the following: Officer Rodarte was
concerned that the mother "was a little depressed," crying about what had happened, asked why the
case was being opened again, and was concerned that the State was going to break up her family. 
 Only one bedroom of the three bedroom home was in use (apparently by the juvenile) as the other
bedrooms were filled with books and clothes. The mother was having a hard time dealing with the
disposition hearing because the graffiti incident had occurred months before, and this was a new
experience to her. She is a substitute teacher and it was hard for her to accept that her own son was
in trouble. A new school year had begun before the case came to court. She agreed to see a
counselor. No other evidence before the referee at the time of his finding even remotely supports
the conclusion that this parent contributed to her child's graffiti offense, except the fact of the
offense itself. We conclude this does not amount to a scintilla.

 The State places some reliance on the events after the referee's finding, when the Appellant
declined to sign the judgment and the referee threatened her with jail. We first note that the referee
had already made his finding and events occurring afterward are therefore of doubtful relevance. The
child was not present to witness the exchange between the parent and referee, and further there is
nothing in the law which would require the mother's signature on recommendations or judgment. 
The Family Code simply requires that the court "furnish a copy of the order to the child." Tex. Fam.
Code Ann. § 54.04(f) (Vernon 2008). Nor is there anything in Appellant's conduct that is
discernable from this record which would constitute direct contempt, as argued by the State. Even
her statement to the referee "[n]ow you're changing your story" was an apparent reference to his
remarks "[w]ell, you didn't do this. You didn't do it so you shouldn't be upset about it." It is
understandable that the Appellant would find this statement inconsistent with a finding that she had
contributed to her son's delinquency, and we find nothing contumacious in her questions. Thus, even
viewing the post-disposition exchange in the light most favorable to the challenged finding, we cannot
conclude that it lends support to a determination of contribution to an act of graffiti.

 Finally, the State argues that the court would have no authority to send Appellant for an
evaluation and counseling unless she was found to have contributed to her son's delinquency. This
is true, but it does not constitute any evidence supportive of the finding. Although the referee's
motives may have been good, nevertheless his findings must be supported by sufficient evidence, and
that simply does not exist here. The mother's issue on appeal is sustained. Because we find the
evidence legally insufficient to support the finding, we need not reach the issue of factual sufficiency. 
CONCLUSION


 For the reasons set out above, we find that the issue before us is reviewable under the collateral
consequences exception to the mootness doctrine. We further find that the evidence was legally
insufficient to support the trial court's finding that the juvenile's mother by willful act or omission,
contributed to, caused, or encouraged the child's delinquent conduct. We therefore reverse that portion
of the trial court's judgment of probation, and order that finding vacated. As modified, the remainder
of the judgment is affirmed.

 SUSAN LARSEN, Justice (former)


January 6, 2010


Before McClure, J., Rivera, J., and Larsen, J.

Larsen, J. (sitting by assignment)

1. There is no indication in the record that the mother was represented, nor that the juvenile's attorney was
present during this exchange.
2. Other cases where Texas courts have found judgments to be moot, but reviewable under the collateral
consequences exception include Cockerham v. Cockerham, 218 S.W.3d 298, 303 (Tex. App.-Texarkana 2007, no
pet.) (family protective order); In re Salgado, 53 S.W.3d 752, 757-58 (Tex. App.-El Paso 2001, orig. proceeding)
(family protective order); State v. Lodge, 608 S.W.2d 910, 912 (Tex. 1980) (order for inpatient mental health
services); In re M.E.G., 48 S.W.3d 204, 209 n.5 (Tex. App.-Corpus Christi 2000, no pet.) (child support contempt
order). These circumstances are comparable in stigmatization to those addressed in this appeal.