COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| JUAN MOLINA, | | No. 08-10-00218-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 290th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Bexar County, Texas |
| | § | |
| Appellee. | | (TC # 1987-CR-5143) |
| | § | |

**O P I N I O N**

Juan Molina appeals from the denial of his motion for post-conviction DNA testing pursuant to Article 64.03 of the Texas Code of Criminal Procedure. We dismiss the appeal as moot.

**FACTUAL SUMMARY**

Molina was charged with aggravated sexual assault in 1987 and a jury convicted him in 1988. Molina first filed a motion for DNA testing in 2001 but the trial court denied that motion. In 2009, Molina filed a second motion for post-conviction DNA testing of a medical rape kit related to an examination of the victim near the time of the offense. The State filed a response indicating that the rape kit was no longer in the possession of the Bexar County Forensic Science Center but a bag containing "undergarments" were still maintained by the San Antonio Police Department Property Room.[1] The trial court ordered testing of the woman's underwear collected as evidence and maintained at the SAPD Property Room. John Campa, an investigator with the Bexar County

---

[1] The trial court determined, based on evidence presented at the hearings on Molina's motion, that the rape kit could not be tested because it had been destroyed. Molina does not raise any issue on appeal regarding this determination.

District Attorney's Office, removed the evidence bag containing the underwear from the SAPD property room and delivered the evidence to the TDPS crime laboratory in Austin on October 20, 2009.

Angela Tanzillo-Swarts, a DNA analyst with the TDPS crime laboratory, performed "tape lifting" on the underwear to pick up "trace evidence" such as "loose hairs or fibers." She did not observe any visible trace evidence on the tape lifts. Tanzillo-Swarts followed the procedure for preserving the tape lift, placed it inside of a manilla envelope, and sealed it. She did not subject the tape lift to additional testing because that task would be performed by a different analyst. Tanzillo-Swarts then examined the underwear for body fluid, including semen, by applying an alternative light source which could make a body fluid stain visible. Tanzillo-Swarts found three stains and applied acid phosphatase to detect semen. The AP test was negative. Tanzillo-Swarts tested one discolored area on the underwear for blood, but that test was negative. She also performed a water extraction on a stain which had reacted to the alternative light source in order to extract any cellular material. Tanzillo-Swarts examined the extracted material using a microscope but she did not find the presence of sperm which would have been a positive indicator for semen. Her search was negative. After completing the testing, Tanzillo-Swarts returned the evidence to its original packaging, resealed it, and returned it to the evidence vault. She did not perform any further testing on the underwear and she did not see the evidence again after placing it in the evidence vault. The TDPS crime laboratory placed the package containing the underwear in the mail for return to the Bexar County District Attorney's Office.

Rebecca Vasquez, a forensic scientist employed by the TDPS crime laboratory, was assigned the task of analyzing the tape lift collected by Tanzillo-Swarts. She discovered that the evidence had been mailed back to the Bexar County District Attorney's Office. After waiting for over a month

for the evidence to be returned for the trace evidence analysis, Vasquez contacted the District Attorney's Office by telephone and Russell Brandau advised her that they were looking for evidence. Vasquez made an inquiry with the U.S. Postal Service but the item could not be traced because more than sixty days had elapsed since it was placed in the mail. The trial court concluded that the package had been lost in the mail and additional testing on the trace evidence could not be performed. Additionally, the court determined that no biological evidence, including semen, had been found which could be tested for comparison with Molina's DNA. The trial court subsequently denied Molina's motion for further DNA testing.

## POST-CONVICTION DNA TESTING

In his sole point of error, Molina asserts that the State, acting through the TDPS crime lab, failed to comply with the trial court's order for DNA testing. Molina requests that we order the State and the TDPS crime lab to comply with the order. He additionally argues that the trial court erred by not requiring additional testing on the evidence.

### *Mootness*

Neither party has addressed whether the loss of the evidence Molina seeks to have tested renders the appeal moot. We raise the issue *sua sponte* because it is a matter of jurisdiction. *See Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)(stating that the constitutional roots of justiciability doctrines such as ripeness, as well as standing and mootness, lie in the prohibition on advisory opinions, which in turn stem from the separation of powers doctrine set forth in Article 2, Section 1 of the Texas Constitution); *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 444 (Tex. 1993)(explaining that the Texas Supreme Court has construed the separation of powers article to prohibit courts from issuing advisory opinions because such is the function of the executive rather than the judicial

department).  Courts do not have jurisdiction to provide advisory opinions, or to decide cases on hypothetical or contingent facts.  *Valley Baptist Medical Center v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000); *General Land Office of the State of Texas v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990); *Beltran v. Beltran*, 324 S.W.3d 107, 110 (Tex.App.--El Paso 2010, no pet.).  The mootness doctrine precludes a court from rendering an advisory opinion.  *Camarena v. Texas Employment Commission*, 754 S.W.2d 149, 151 (Tex. 1988); *Beltran*, 324 S.W.3d at 110.  A case is rendered moot when:  (1) it appears that a party seeks to obtain a judgment upon some controversy, when in reality none exists; or (2) a party seeks a judgment upon some matter which cannot have a practical legal effect upon a then existing controversy.  *Beltran*, 324 S.W.3d at 110.  That is to say, when an actual controversy no longer exists between the parties, "the decision of an appellate court would be a mere academic exercise."  *Beltran*, 324 S.W.3d at 110, *quoting Hanna v. Godwin*, 876 S.W.2d 454, 457 (Tex.App.--El Paso 1994, no writ).

The evidence Molina seeks to have tested is no longer in the State's possession and the record supports the trial court's determination that the evidence is lost in the U.S. mail.  Assuming for the sake of argument that we agree with Molina and rule in his favor, our judgment requiring that the evidence be tested could not be enforced.  As such, it could not have a practical legal effect upon the controversy and it would be contingent on the evidence being found.

There are two exceptions to the mootness doctrine.  The first exception occurs when a claim is "capable of repetition, yet evading review."  *Pharris v. State*, 165 S.W.3d 681, 687-88 (Tex.Crim.App. 2005).  This exception is limited to the situation where: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.  *Id*. at 688; *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).  This exception does not apply

to this appeal.

The second exception is referred to as the collateral consequences exception. *General Land Office*, 789 S.W.2d at 571. The collateral consequences exception applies to severely prejudicial events, the effects of which continue to stigmatize helpless or hated individuals long after the unconstitutional judgment has ceased to operate. *Id.*; *In re R.M.*, 234 S.W.3d 103, 104-05 (Tex.App.--El Paso 2007, no pet.). The Texas Supreme Court applied the collateral consequences exception in *Carrillo v. State*, 480 S.W.2d 612, 616-17 (Tex. 1972) where a juvenile was discharged from probation while his case was on appeal. The Court held that the appeal was not moot because juvenile adjudications carry deleterious collateral effects and legal consequences including the stigma attached to being adjudged a juvenile delinquent. *Id.* at 617. The Supreme Court based its decision on the premise that "a minor should have the right to clear himself by appeal" and this right should not disappear when the sentence given is so short that it expires before the appellate process is completed. *Id.* When faced with a similar issue in *In re R.M.*, this Court distinguished *Carrillo* and did not apply the collateral consequences exception in a case where the juvenile did not appeal the adjudication order and only challenged the order modifying disposition. *In re R.M.,* 234 S.W.3d at 105. We reasoned that our resolution of the issues presented on appeal could not have any impact on the collateral effects and legal consequences of being adjudged a juvenile delinquent. *Id.*

In the instant case, our judgment requiring that the lost evidence be subjected to additional testing would have no effect on Molina's underlying conviction unless the evidence is someday found and subjected to testing. Even assuming Molina is entitled to reversal of the trial court's order denying additional DNA testing, our decision would not have the effect of clearing Molina's name nor would it have any impact on the collateral effects and legal consequences of his underlying conviction. We conclude that the collateral consequences exception does not apply in this case.

Accordingly, the appeal is dismissed as moot.

November 9, 2011 

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)