COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
|  |  | No. 08-08-00284-CV |
| IN THE MATTER OF S.J.C., A | § |  |
|  |  | Appeal from the |
| JUVENILE. | § |  |
|  |  | 65th District Court |
|  | § |  |
|  |  | of El Paso County, Texas |
|  | § |  |
|  |  | (TC# 08,00075) |
|  | § |  |

## O P I N I O N

In this juvenile proceeding, the child's mother appeals a finding that she contributed to her son's delinquency, urging that the evidence was insufficient to support that conclusion. The State initially responded on the merits. In a supplemental brief, the State now urges that this issue is moot, as the juvenile has completed his term of probation. Finding that the issue falls within the collateral consequences exception to the mootness doctrine, we address the merits of the appeal. We conclude that the evidence is legally insufficient to support the challenged finding, and we therefore reverse the judgment as to that finding only.

### FACTS

S.J.C. was charged by petition with engaging in delinquent conduct in the form of marking with indelible marker on a bathroom sink, mirrors and tile walls in violation of TEX. PEN. CODE ANN. § 28.08. An attorney was appointed to represent the child, and with his attorney's concurrence the child agreed to a hearing before the juvenile court referee without a jury. The child pleaded true to committing the offense of graffiti misdemeanor both in open court and by written waiver, stipulation and admission.

In her predisposition report, juvenile probation officer Dora Rodarte noted that the child's mother was a substitute teacher for El Paso I.S.D., and the father had not been in contact with the child for many years. The mother has no criminal history. She attended a PEACE meeting on August, 11, 2008. The child participated in school band and swim team and attended church with his mother on Wednesdays and Sundays. He had no curfew because he rarely went out, but when he did his mother would drive him to and from the event. It was the probation officer's opinion that the mother had not contributed to the child's delinquent behavior, as the mother made sure the juvenile was involved in positive activities and maintained contact with school officials. The officer noted that the delinquent behavior was attributable to negative associations and peer pressure.

A disposition hearing was held on August 27, 2008, before juvenile court referee Richard Ainsa. The predisposition report was entered in evidence at the hearing. Officer Rodarte testified that she believed that the child was in need of rehabilitation, and recommended that he be placed on supervised probation with a 5 p.m. curfew until he turned 18, with a review hearing in four months. Rodarte testified that the child had committed the grafitti offense because he wanted to be accepted into the "Crazy Azz Tagging Crew" (which she noted was not a gang). At home, the child's mother reported no problems with the child other than some "talking back" the year before, which was no longer a problem. The child complied with his mother's rules and did chores such as pulling weeds, cleaning his room and throwing out trash. Sometimes he would question these rules, but he did comply. Officer Rodarte further stated that the mother was able to provide proper control and supervision. She did not believe that the mother had contributed to the delinquency.

Officer Rodarte further testified that, in a conversation before the hearing, she had recommended to the mother that she be evaluated at El Paso MHMR, and the mother responded that if she was going to go then the child had to go too. Ms. Rodarte asked if there were any problems,

to which the mother replied, "Well, I'm the mother and there are a lot of problems." Upon hearing that statement, the mother (in the courtroom but not on the witness stand) stated, "No, I didn't say that." The referee admonished her not to speak out of turn. Later in Rodarte's testimony, she explained her reason for recommending that the mother attend counseling:

> The reason for this was that during the interview, the juvenile was fine, we talked, he was very open. However, when I spoke to the mother, when I interviewed her, she seemed to be–I was a little concerned that maybe she was a little depressed. She was crying a lot about what had happened, stated that why were we opening up the case again, that we were going to break up her family. I told her to calm down and that everything would be okay because [the juvenile] appeared fine.

> I was a little concerned also when I went to the home because it is a three bedroom home, two bath, however, they only use one of the bedrooms because the home has a lot of things, you know, stacks of books, clothes. She did indicate that she was trying to have a garage sale.

The juvenile's mother also testified at the disposition hearing. She explained that the child had a hard time in 2007 when they had moved to Nevada for a year. She also discussed her depression–as a teacher she is required to issue referrals on kids, and it was hard for her to accept that her own son was in trouble at school. She did not understand that the process would require her to come to court, and she had never been involved in anything like this before. The referee reassured her, saying, "Well, you didn't do this. You didn't do it so you shouldn't be upset about it." Upon questioning, she stated that she was willing to see a counselor. In the judgment of probation, the court placed the juvenile on probation and also found that the child's mother, by willful act or omission, had contributed to, caused, or encouraged the child's delinquent conduct, and ordered her to participate in the juvenile's rehabilitation.

Some time after the hearing, but still on the same day, the case went back on the record because the mother and juvenile had refused to sign a copy of the referee's recommendations after having been ordered to do so. The juvenile had been returned to school by this time, but the mother

was present[1] and the referee told her: "[Y]ou're going to have to sign it [the recommendations] or you're going to go to the county jail." The following exchange then occurred:

> The Mother: Sir, I'm not refusing to sign it. What you–hopefully it was recorded in the hearing this morning. You had mentioned that I was not–I had not contributed to his delinquency. What you said and what she has written in the papers are not in agreement. Her paper reads that I have. So, therefore, for that reason, I –
>
> The Court: I didn't comment on the record.
>
> The Mother: I have asked her to go ahead and have you fix that.
>
> The Court: No, because I didn't–.
>
> The Mother: What you said–
>
> The Court: Ms. Valdez, I didn't make that finding on the record, and whatever is in my Order–
>
> The Mother: You mentioned it. Was it–was it recorded earlier?
>
> The Court: Do you remember anything about me mentioning that?
>
> Officer Rodarte: I don't know if you said it, Your Honor. I did say that we had not found that.
>
> The Court: It was your recommendation.
>
> Officer Rodarte: Right.
>
> The Court: That's not my finding.
>
> Officer Rodarte: However, I explained to her that that was based on what she reported to me at the interview. However, right before we walked in and I told her about the evaluation that I was going to have her submit to, she said that there was issues and that she would not turn her son in, therefore, she was not truthful with me in the interview.
>
> The Mother: Well–
>
> The Court: No, ma'am. You listen to me. That's her recommendation. I don't have

---

[1]  There is no indication in the record that the mother was represented, nor that the juvenile's attorney was present during this exchange.

to follow it, and I didn't follow it. I found that you contributed to the delinquency of your son. So that's my finding. If you don't like it, your remedy is to appeal my judgment. I'm not going to change it. So you either sign that acknowledging that you received the judgment or you're going to go to the county jail. If you don't like what it says in there, you're free to appeal it. You have a certain amount of time after today to appeal it to another court to have it reviewed.

. . .

The Court: Ma'am, I didn't say anything. I didn't say anything because I didn't agree with her recommendation, and I made a finding in there that you did contribute.

The Mother: Now you're changing your story.

The Court: No.

The Mother: Yes.

The Court: Ms. Valdez, you're going to make me lose my patience. You either sign it or you're going to the county jail.

The Mother: It doesn't matter. Do what you will with me. It doesn't matter to me.

The Court: Then the Court's finding you in contempt of court. You'll remain in the county jail until you sign it. You'll sit there as long as it takes until you sign that.

The Mother: Whatever.

The Court: All right. Take her into custody.

The Mother: Good job, Dora.

Still later, the referee brought the mother and juvenile back into the courtroom and presented them with a copy of the judgment of probation on the record. He then released the mother from custody.

A review hearing was held on January 7, 2009, at which time the juvenile's probation was terminated.

**MOOTNESS**

We first address the State's argument that because the juvenile's probation has been terminated, the single issue before us is moot and we should dismiss this appeal.

When the judgment of this Court can have no effect on an existing controversy, a case becomes moot. *In the Matter of G.E.,* 225 S.W.3d 647, 648 (Tex. App.–El Paso 2006, no pet.). A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *In the Matter of R.M., Jr.,* 234 S.W.3d 103, 104 (Tex. App.–El Paso 2007, no pet.) In both the *G.E.* and *R.M.* cases, this Court held that where a juvenile's probation had been terminated before submission of the appeal, and where the appeal concerned only disposition orders, not the adjudication of delinquency itself, the appeals were moot. *R.M. Jr.,* 234 S.W.3d at 105; *G.E.* 225 S.W.3d at 648. This appeal also concerns the court's disposition order, not the adjudication of delinquency. This juvenile pleaded true to a single allegation, which is not challenged here. Therefore, unless some exception to the mootness doctrine applies, we are constrained to find that there is no live controversy and the appeal is moot.

There are two exceptions which will allow an appellate court to address issues that are otherwise moot: (1) capable of repetition yet evading review; and (2) collateral consequences. *General Land Office of the State of Texas v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex. 1990); *R.M., Jr.,* 234 S.W.3d at 104. In order to invoke the "capable of repetition yet evading review" exception, the appellant must show that: (1) the challenged action was too short in duration to be litigated fully before the action cease or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again. *R.M. Jr.,* 234 S.W.3d at 104. We think that the first prong of this test is met here. The child's disposition hearing was held on August 27, 2008. The issues of indigency and appointment of counsel were addressed during the pendency of the appeal. The court reporter asked for a single 30-day extension for filing the record; both Appellant's counsel and the State requested 45-day extensions for filing their briefs. All extensions were granted. Thus, it has been over a year since the disposition hearing, although no

party to the appeal can be faulted for undue delay. We note that the termination of juvenile probation before submission on appeal is apparently quite common, as this Court has issued three opinions on very similar circumstances in the recent past. *In the Interest of D.R.Z.,* No. 08-07-00306-CV, 2009 WL 1360894, at *2 (Tex. App.–El Paso May 13, 2009 no pet.); *R.M. Jr.,* 234 S.W.3d at 105; *G.E.* 225 S.W.3d at 648.

Nevertheless, we think the Appellant cannot meet the second prong of this exception, requiring a showing that the same complaining party will be subjected to the same action again. Even if S.J.C. is subject to another juvenile proceeding before his eighteenth birthday, the facts and circumstances of that proceeding will be different, requiring different proof and findings. We therefore conclude that the "capable of repetition yet evading review" exception to mootness does not apply.

The "collateral consequences" exception applies to severely prejudicial events, the effects of which continue to stigmatize helpless or hated individuals long after the challenged judgment has ceased to operate. *R.M. Jr.,* 234 S.W.3d at 104. The Supreme Court has applied this exception in juvenile cases where the adjudication of delinquency is challenged, reasoning that such a judgment has a number of collateral consequences. *Carrillo v. State,* 480 S.W.2d 612, 616-17 (Tex. 1972). These consequences include the retention of the adjudication by the court and juvenile officers, the use of such records in assessing future punishments, and the publishing of the juvenile record in the event the individual is later charged with a felony. *Id.* The exception generally does not apply where only some aspect of the court's disposition is challenged (usually the terms and conditions of probation), as a resolution of disposition issues on appeal could not impact the collateral effects and legal consequences of being adjudged a juvenile delinquent. *D.R.Z.,* 2009 WL 1360894, at *1; *R.M. Jr.,* 234 S.W.3d at 105; *In the Matter of L.S.,* No. 04-07-00751-CV, 2008 WL 2923855, at *2 (Tex.

App.–San Antonio July 30, 2008, no pet.).

The issue before us here is neither the adjudication of delinquency, which would clearly be covered by the collateral consequences exception, nor purely an issue of disposition, which would clearly be moot. Rather, we are asked to review the juvenile court's finding that a parent contributed to her son's delinquency, which we believe presents different questions. We have been unable to find any cases addressing this particular issue, and therefore we address it as one of first impression.

Normally, in order to invoke the collateral consequences exception, appellant must show both: (1) a concrete disadvantage has resulted from the judgment; and (2) the disadvantage will persist even if the judgment is vacated and the cause dismissed as moot. *Marshall v. Housing Authority of City of San Antonio,* 198 S.W.3d 782, 788-89 (Tex. 2006). Usually, when a case becomes moot during appeal, this Court will vacate the underlying judgment. *See D.R.Z.,* 2009 WL 1360894, at *2; *G.E.,* 225 S.W.3d at 648-9; *Hanna v. Godwin,* 876 S.W.2d 454, 457 (Tex. App.–El Paso 1994, no writ). This prevents prejudice to the rights of the parties when appellate review is precluded by reasons other than the voluntary acts of the parties. *Marshall,* 198 S.W.3d at 788-89. Once the judgment is vacated and the case dismissed, collateral consequences of the judgment are ordinarily negated to the same extent as if the judgment were reversed. *Id.* at 789. In juvenile cases, however, we have consistently declined to vacate the entire cause, as aspects of the judgment remain that are not moot. *See G.E.,* 225 S.W.3d at 648-49; *R.M. Jr.,* 234 S.W.3d at 105. As we will not dismiss the underlying cause in this case, we need not examine the second prong of the test; rather we need only find that a concrete disadvantage has resulted from the judgment. For the following reasons, we conclude that the finding that a parent has contributed to the delinquency of her minor child satisfies this test.

In its *Carrillo* opinion, the Supreme Court rejected the argument that adjudication of

delinquency should be considered moot when probation had been discharged, noting that "a minor should have the right to clear himself by appeal. This right should not be removed because the sentence given is so short that it expires before appellate steps can be completed." *Carrillo,* 480 S.W.2d at 617. This, even though juvenile proceedings are subject to "as little publicity as possible," impose no civil liability on the child, and insure that the child shall not be deemed a criminal nor the adjudication be deemed a conviction. *Id.* The adjudication will not disqualify the child from civil service employment. *Id.* Nevertheless, there were aspects of an adjudication that constitute a stigma or collateral penalty: an adjudication of delinquency could effect admission to a profession, the armed services or private employment. *Id.* Moreover, other legal consequences accrue with an adjudication including consideration upon setting punishment for future criminal or juvenile cases, and publication of the record if the juvenile is later charged with a felony. *Id.*

In our opinion, the finding that a parent has contributed to a child's delinquency is more like one challenging an adjudication of delinquency than one challenging a term of probation. Regarding legal consequences, once the juvenile court has found that a person, by wilful act or omission, has contributed to, caused or encouraged a delinquent child's delinquent conduct, the court may: (1) enjoin all contact with the child; (2) order a person living in the household to participate in counseling; (3) pay for the child's treatment program; pay restitution; and (4) attend a program under the education code. Tex. Fam. Code Ann. § 54.041 (Vernon 2008). Here, the court ordered the mother to attend family counseling, pay numerous fees, pay restitution and provide the probation department with the child's school records. These are clearly legal consequences that would not exist absent the challenged finding.

More importantly, we believe a serious social stigma is attached to a finding that a parent has contributed to her child's delinquency. Indeed, until 1995, contributing to the delinquency or

dependency of a child was a stand-alone crime. Acts 1995, 74th Leg., R.S., ch. 1024, § 26, 1995 Tex. Gen. Laws 5095, 5105, eff. Sept. 1, 1995; *see Axelrod v. State,* 764 S.W.2d 296, 298-99 (Tex. App.–Houston [1st Dist.] 1988), *pet. dism'd*, 789 S.W.2d 594 (Tex. Crim. App. 1990); *James v. State,* 635 S.W.2d 653, 654 (Tex. App.–Fort Worth 1982, no pet.). Even though the finding here carries no criminal sanctions, we believe it is nevertheless a charge going to the heart of a parent's societal role.[2]

Finally, we note that the juvenile referee specifically told the mother that her remedy, if she did not like his decision, was to appeal to this Court. She has properly brought an appeal, and we believe that there are consequences attendant to the finding that require us to apply the collateral consequences exception to mootness here. We therefore turn to the merits of Appellant's challenge, whether there is sufficient evidence to support the referee's finding that the mother contributed to the delinquency of her son.

## SUFFICIENCY OF THE EVIDENCE

A trial court's findings are reviewable for legal and factual sufficiency in the same way as are a jury's answers to questions in a charge. *In the Matter of J.K.R.,* No. 08-03-00406-CV, 2004 WL 805004, at *3 (Tex. App.–El Paso April 15, 2004, no pet.). To determine whether the evidence is legally sufficient, we consider only the evidence and inferences that support the trial court's findings and disregard all evidence and inferences to the contrary. The evidence is legally sufficient if more than a scintilla of evidence supports the challenged finding. *Id.* To determine whether the

---

[2] Other cases where Texas courts have found judgments to be moot, but reviewable under the collateral consequences exception include *Cockerham v. Cockerham,* 218 S.W.3d 298, 303 (Tex. App.–Texarkana 2007, no pet.) (family protective order); *In re Salgado,* 53 S.W.3d 752, 757-58 (Tex. App.–El Paso 2001, orig. proceeding) (family protective order); *State v. Lodge,* 608 S.W.2d 910, 912 (Tex. 1980) (order for inpatient mental health services); *In re M.E.G.,* 48 S.W.3d 204, 209 n.5 (Tex. App.–Corpus Christi 2000, no pet.) (child support contempt order). These circumstances are comparable in stigmatization to those addressed in this appeal.

evidence is factually sufficient, we consider all the evidence to determine whether the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* Here, the Appellant does not specify whether she is making a legal or factual sufficiency challenge, and she cites authority setting out the standards of review for both. We therefore assume that both legal and factual sufficiency challenges are intended.

With regard to legal sufficiency, we examine only the evidence supporting the finding that the mother contributed to her son's delinquency. We find the following: Officer Rodarte was concerned that the mother "was a little depressed," crying about what had happened, asked why the case was being opened again, and was concerned that the State was going to break up her family. Only one bedroom of the three bedroom home was in use (apparently by the juvenile) as the other bedrooms were filled with books and clothes. The mother was having a hard time dealing with the disposition hearing because the graffiti incident had occurred months before, and this was a new experience to her. She is a substitute teacher and it was hard for her to accept that her own son was in trouble. A new school year had begun before the case came to court. She agreed to see a counselor. No other evidence before the referee at the time of his finding even remotely supports the conclusion that this parent contributed to her child's graffiti offense, except the fact of the offense itself. We conclude this does not amount to a scintilla.

The State places some reliance on the events after the referee's finding, when the Appellant declined to sign the judgment and the referee threatened her with jail. We first note that the referee had already made his finding and events occurring afterward are therefore of doubtful relevance. The child was not present to witness the exchange between the parent and referee, and further there is nothing in the law which would require the mother's signature on recommendations or judgment. The Family Code simply requires that the court "furnish a copy of the order to the child." TEX. FAM.

CODE ANN. § 54.04(f) (Vernon 2008). Nor is there anything in Appellant's conduct that is discernable from this record which would constitute direct contempt, as argued by the State. Even her statement to the referee "[n]ow you're changing your story" was an apparent reference to his remarks "[w]ell, you didn't do this. You didn't do it so you shouldn't be upset about it." It is understandable that the Appellant would find this statement inconsistent with a finding that she had contributed to her son's delinquency, and we find nothing contumacious in her questions. Thus, even viewing the post-disposition exchange in the light most favorable to the challenged finding, we cannot conclude that it lends support to a determination of contribution to an act of graffiti.

Finally, the State argues that the court would have no authority to send Appellant for an evaluation and counseling unless she was found to have contributed to her son's delinquency. This is true, but it does not constitute any evidence supportive of the finding. Although the referee's motives may have been good, nevertheless his findings must be supported by sufficient evidence, and that simply does not exist here. The mother's issue on appeal is sustained. Because we find the evidence legally insufficient to support the finding, we need not reach the issue of factual sufficiency.

## CONCLUSION

For the reasons set out above, we find that the issue before us is reviewable under the collateral consequences exception to the mootness doctrine. We further find that the evidence was legally insufficient to support the trial court's finding that the juvenile's mother by willful act or omission, contributed to, caused, or encouraged the child's delinquent conduct. We therefore reverse that portion of the trial court's judgment of probation, and order that finding vacated. As modified, the remainder of the judgment is affirmed.

SUSAN LARSEN, Justice (former)

January 6, 2010

Before McClure, J., Rivera, J., and Larsen, J.
Larsen, J. (sitting by assignment)