

IN THE
TENTH COURT OF APPEALS

_____

No. 10-11-00447-CV

IN RE J.C.L., A JUVENILE

_____

Original Proceeding

_____

MEMORANDUM OPINION

In this mandamus proceeding, we are asked to determine whether the respondent, Judge Robert Stem of the 82nd Judicial District Court, abused his discretion in failing to consider and hold a hearing on relator J.C.L.'s applications for a writ of habeas corpus. For the reasons stated herein, we conditionally grant relator's petition for writ of mandamus.

## I.   BACKGROUND

This is not the first time this matter has been before this Court. *See generally In re J.C.L.*, No. 10-11-00407-CV, 2011 Tex. App. LEXIS 8756 (Tex. App.—Waco Oct. 28, 2011, orig. proceeding) (mem. op.). As such, the majority of the operative facts in this case have been outlined in our opinion in relator's previously-filed mandamus. *See id.* at **1-

3.  In his previously-filed mandamus, relator complained about the trial court's decision to detain him because of: (1) his involvement in a one-car accident that resulted in the death of another minor, C.N.J.; (2) the allegation of delinquent conduct—criminally-negligent homicide; and (3) the conclusion that he is a danger to himself and the community. *See id.* at **1-2; *see also* TEX. FAM. CODE ANN. §§ 51.03(a)(1), 54.01 (West 2008 & Supp. 2011); TEX. PENAL CODE ANN. § 19.05 (West 2011). We denied relator's mandamus on the basis that he had an adequate remedy other than mandamus relief to challenge his detention—in particular, a direct appeal pertaining to an application for a writ of habeas corpus that was pending in the trial court. *See In re J.C.L.*, 2011 Tex. App. LEXIS 8756, at **4-7.

In this mandamus, relator notes that he filed his original habeas corpus application on October 25, 2011. The trial court notified him that a hearing would not be held on the application until the Robertson County District Attorney's Office responded. Nevertheless, relator sent letters to the trial court requesting a hearing on the application. While his application was pending in the trial court, relator was released from his ten-day detention on November 1, 2011; however, upon relator's release from detention, the trial court imposed several conditions upon relator, including a curfew, prohibiting relator from operating a motor vehicle under any circumstance, requiring relator to wear an electronic GPS monitoring device, and prohibiting relator from going anywhere other than home and school.[1]

---

[1] It is noteworthy that the trial court did not conduct a hearing regarding the imposition of the conditions of release; therefore, neither relator nor the Robertson County District Attorney's Office were afforded the opportunity to present evidence regarding the propriety of the conditions of release.

In a letter dated October 25, 2011 but file-stamped November 4, 2011, the trial court informed the parties that relator's habeas corpus application was dismissed as moot because relator had been released from detention. Shortly thereafter, relator sent the trial court another letter requesting a hearing on his habeas corpus application. Relator specifically noted that: "The Court of Appeals has indicated that the legal vehicle to address my client's issues is the Writ of Habeas Corpus. I cannot invoke the Appellate Court's jurisdiction without an order. Thus, if the Court would prefer to deny my application without a hearing, I would be satisfied with that course of action."

On November 7, 2011, relator filed an amended habeas corpus application, challenging, once again, the legality of his detention and the conditions of release imposed by the trial court. In his amended application, relator also referenced our opinion in his previously-filed mandamus and included it in the appendix. Apparently, no action has been taken with respect to relator's amended application.

On December 2, 2011, relator filed this mandamus complaining that the trial court erred in concluding that his habeas corpus application was moot and that the trial court abused its discretion by failing to conduct a hearing on his habeas corpus application. We requested a response from the real party in interest, the Robertson County District Attorney's Office; a response was filed on December 21, 2011. On January 23, 2012, this matter was orally argued.

## II.    STANDARD OF REVIEW

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when there is "no adequate remedy by appeal." *In re Prudential Ins.*

*Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (citations omitted).  "A trial court has no 'discretion' in determining what the law is or applying the law to the facts."  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).  "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion."  *Id.* (citations omitted).  And, generally speaking, an adequate legal remedy exists if the relator is able to raise the issue on appeal.  *See id.*  However, in some extraordinary cases, an appellate remedy may be inadequate when the benefits to mandamus review outweigh the detriments.  *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462, 468-69 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.  Moreover, a relator has the burden of providing this Court with a sufficient record to establish his right to mandamus relief.  *See Walker*, 827 S.W.2d at 837; *see also* TEX. R. APP. P. 52.3, 52.7.

## III.   STANDING AND MOOTNESS

In his first issue, relator contends that the trial court erred in concluding that his original application for writ of habeas corpus is moot.  We agree.

## A.  Standard of Review and Applicable Law[2]

---

[2] As we noted in relator's previous mandamus, the Texas Supreme Court and the Texas Legislature have recognized that, in general, juvenile proceedings such as these are civil, not criminal, in nature.  *See In re Hall*, 286 S.W.3d 925, 927 (Tex. 2009) ("Although quasi-criminal in nature, proceedings in juvenile court are considered civil cases . . . ."); *In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002) (noting that the Texas Family Code governs juvenile delinquency proceedings in Texas and requires that the proceedings be conducted under the Texas Rules of Civil Procedure, except as to discovery, and the Texas Rules of Evidence applicable to criminal proceedings); *In re M.R.*, 858 S.W.2d 365, 366 (Tex. 1993); *Carrillo v. State*, 480 S.W.2d 612, 615 (Tex. 1972); TEX. FAM. CODE ANN. § 51.17 (West Supp. 2011); *see also In re J.C.L.*, No. 10-11-00407-CV, 2011 Tex. App. LEXIS 8756, at *4 (Tex. App.—Waco Oct. 28, 2011, orig. proceeding) (mem. op.).

Whether a court has subject-matter jurisdiction is a legal question that we review de novo.  *See Trulock v. City of Duncanville*, 277 S.W.3d 920, 923 (Tex. App.—Dallas 2009, no pet.).  The mootness doctrine implicates subject-matter jurisdiction.  *See id.*

"Standing is a constitutional prerequisite to maintaining suit in either federal or state court."  *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)).  For a plaintiff to have standing, a controversy must exist between the parties at every stage of the legal proceedings, including the appeal.  *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S. Ct. 104, 106-07, 95 L. Ed. 36 (1950); *see also Williams*, 52 S.W.3d at 184 (Tex. 2001).  If a controversy ceases to exist or, in other words, "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," then the case becomes moot.  *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 1183, 71 L. Ed. 2d 353 (1982); *see O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 683-84, 38 L. Ed. 2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *see also Williams*, 52 S.W.3d at 184.  And if a case becomes moot, the parties lose standing to maintain their claims.  *Williams*, 52 S.W.3d at 184 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06, 103 S. Ct. 1660, 1666-67, 75 L. Ed. 2d 675 (1983); *Murphy*, 455 U.S. at 481, 102 S. Ct. at 1183).

**B. Discussion**

In his original habeas corpus application filed on October 25, 2011, relator argued that:  "The State presented no evidence that the child was a flight risk, no evidence that

the child was driving a vehicle and therefor, a danger to anyone, and no evidence that

the child was not being adequately supervised by his parents." Relator also asserted

that:

> The juvenile system is designed to rehabilitate rather than incarcerate[;] protect, rather than punish. The Court in detaining the child in this case did the opposite. The Court decided to punish by incarceration and in so doing, did not protect the child. . . . [T]he juvenile system also seeks to avoid the taint of criminality and to prevent recidivism and promote rehabilitation. The best method of avoiding the attachment of criminal taint is by keeping the child completely out of the system. By detaining the child, in the instant case, the Court threw the child completely into the system.

Before he could get a hearing on his original habeas corpus application, relator was

released from the juvenile detention center. However, after releasing relator from

detention but without a hearing, the trial court imposed several conditions of release,

which include a curfew, a prohibition from operating a motor vehicle, and requirements

to wear a GPS-monitoring device and only go to school and his home. The trial court

then issued a letter ruling dismissing relator's original habeas corpus application as

moot.

The crux of relator's habeas corpus applications is that he has been and is

currently being subjected to an unlawful restraint on his liberty. We agree that relator's

liberty has been and continues to be restrained.[3] In addition to being originally

detained in the juvenile detention center, relator is currently subject to additional

restraints on his liberty via the conditions imposed on his release. *See Ex parte Williams*,

---

[3] Despite our conclusion that relator's original habeas corpus application is not moot, we decline to comment on the merits of the application—namely, whether the restraints on relator's liberty were and are unlawful.

690 S.W.2d 243, 244 (Tex. 1985) ("'It is not required that the applicant for a writ of habeas corpus be actually confined in a jail. Any character of restraint which precludes absolute and perfect freedom of action will justify the issuance of the writ.'") (quoting *Ex parte Calhoun*, 127 Tex. 54, 91 S.W.2d 1047, 1048 (1936)); *see also Hensley v. Mun. Court*, 411 U.S. 345, 349, 93 S. Ct. 1571, 1573-74, 36 L. Ed. 2d 294 (1973) (holding that one may be in custody for habeas corpus purposes despite the fact that such person has been released from jail on bail or personal bond). As such, we find that a controversy—a continued restraint on relator's liberty—existed at the time of his release and remains in existence today. *See Ex parte Williams*, 690 S.W.2d at 244 (concluding that Williams's liberty was restrained even though he was out on bond because incarceration "is not a speculative possibility where the unfolding of events may render the controversy moot; his bond could be revoked at any time")[4]; *see also In re Richards*, 202 S.W.3d 779, 789 (Tex. App.—Beaumont 2006, pet. denied) (noting that courts have reviewed various restrictions or restraints on liberty that do not amount to confinement through habeas proceedings) (citing *Ex parte Alakayi*, 102 S.W.3d 426, 432 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (reviewing restrictions imposed in a community-supervision order limiting contact with minors and creating a child safety zone); *In re Pierre*, 50 S.W.3d 554, 558-59 (Tex. App.—El Paso 2001, orig. proceeding) (examining restrictions imposed for failing to pay child support, and requiring father to submit to testing for drugs and alcohol); *In re Ragland*, 973 S.W.2d 769, 771 (Tex. App.—Tyler 1998, orig.

---

[4] If relator were to violate any of the conditions of release imposed, he would be subject to further detention. *See* TEX. FAM. CODE ANN. §§ 53.02(b), 54.01(e) (West 2008).

proceeding) (reviewing a restriction requiring a person to perform a certain amount of community service each week); *Ex parte Duncan*, 796 S.W.2d 562, 564 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) (examining restrictions requiring a person in violation of a child-support order to report monthly to a probation officer and limiting his right to travel)). We therefore disagree with the trial court's determination that relator's original habeas corpus application is moot.[5]

## IV. WHETHER THE TRIAL COURT'S FAILURE TO CONSIDER AND RULE ON RELATOR'S HABEAS CORPUS APPLICATION WAS AN ABUSE OF DISCRETION

In his second issue, relator argues that the trial court abused its discretion in refusing to hold a hearing on his habeas corpus application because the act of holding a hearing is ministerial.

### A. The Trial Court's Duty to Consider and Rule on a Motion

As noted earlier, mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135-36. A court may abuse its discretion by failing to execute a ministerial task for which no discretion attaches, such as refusing to conduct a hearing or rule on a properly-pending motion. *See Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992) (per curiam); *In re Blakeney*, 254 S.W.3d 659, 661 (Tex. App.—Texarkana 2008, orig.

---

[5] We point out that the purpose of a habeas corpus proceeding is not to determine the ultimate guilt or innocence of the applicant, but only to ascertain whether the applicant's liberty has been unlawfully restrained. *See Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979); *In re Alexander*, 243 S.W.3d 822, 827 (Tex. App.—San Antonio 2007, orig. proceeding); *see also In re Sanner*, No. 01-09-00001-CV, 2010 Tex. App. LEXIS 4031, at *9 (Tex. App.—Houston [1st Dist.] May 20, 2010, orig. proceeding) (mem. op.).

proceeding); *see also In re Williams*, No. 07-11-00429-CV, 2011 Tex. App. LEXIS 8808, at **1-2 (Tex. App.—Amarillo Nov. 3, 2011, orig. proceeding) (per curiam).

The parties do not dispute that relator's habeas corpus applications were properly filed and before the trial court. In addition, the record reflects that relator has requested that the trial court hold a hearing and ultimately rule on his habeas corpus applications. "While it is a basic premise that an appellate court lacks the power to compel a trial judge to do a particular act involving or requiring discretion on his part, this Court is empowered to order a trial judge to exercise his discretion in some manner." *O'Donniley v. Golden*, 860 S.W.2d 267, 269 (Tex. App.—Tyler 1993, orig. proceeding); *see In re Chavez*, 62 S.W.3d 225, 228 (Tex. App.—Amarillo 2001, orig. proceeding) ("[A]dmittedly, the need to consider and rule upon a motion is not a discretionary act."); *see also In re Minnfee*, No. 07-09-0005-CV, 2009 Tex. App. LEXIS 332, at *2 (Tex. App.—Amarillo Jan. 16, 2009, orig. proceeding) (mem. op.) ("[W]e cannot tell a trial judge how to rule on motions pending before them before the trial judge himself rules on them."). We therefore conclude that the trial court has a ministerial duty to consider and rule on relator's habeas corpus applications, especially in light of our conclusion that the trial court's dismissal of relator's habeas corpus application as moot was improper.

## B. Reasonable Time for Trial Court to Perform its Ministerial Duty

Despite our conclusion that it has a ministerial duty to consider and rule upon relator's properly-pending habeas corpus applications, the trial court has a reasonable time within which to perform its ministerial duty. *See In re Blakeney*, 254 S.W.3d at 661;

*see also Safety-Kleen Corp. v. Garcia*, 945 S.W.2d 268, 269 (Tex. App.—San Antonio 1997, orig. proceeding). A trial court's refusal to rule on a pending motion within a reasonable amount of time constitutes a clear abuse of discretion. *See In re Shredder Co., L.L.C.*, 225 S.W.3d 676, 679 (Tex. App.—El Paso 2006, orig. proceeding). Whether a reasonable time for the trial court to act has lapsed is dependent upon the circumstances of each case. *In re Blakeney*, 254 S.W.3d at 662. "Determining what time period is reasonable is not subject to exact formulation . . . . Moreover, no bright line separates a reasonable time period from an unreasonable one." *Id.* (citing *In re Keeter*, 134 S.W.3d 250, 253 (Tex. App.—Waco 2003, orig. proceeding); *In re Chavez*, 62 S.W.3d at 228). In analyzing whether a reasonable period has lapsed, Texas courts have noted the following:

> "[A reasonable time to rule] is dependent upon a myriad of criteria, not the least of which is the trial court's actual knowledge of the motion, its overt refusal to act on same, the state of the court's docket, and the existence of other judicial and administrative matters which must be addressed first. *Ex parte Bates*, 65 S.W.3d 133[, 135] (Tex. App.—Amarillo 2001, orig. proceeding). So too must the trial court's inherent power to control its own docket be factored into the mix. *See Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 694-95 (Tex. App.—Amarillo 1998, pet. denied) (holding that a court has the inherent authority to control its own docket)."

*In re Blakeney*, 254 S.W.3d at 663 (quoting *In re Chavez*, 62 S.W.3d at 228-29). Furthermore, because the trial court's power to control its own docket is discretionary, a reviewing appellate court may not arbitrarily interfere with it. *Ex parte Bates*, 65 S.W.3d at 135.

Here, relator was detained on October 24, 2011. He filed his original habeas corpus application the next day—October 25, 2011. The trial court responded to relator's habeas corpus application by informing him that it would schedule a hearing or issue a ruling on the pleadings once the State filed a response to his application. However, despite relator's requests that the trial court conduct a hearing on his application, the trial court issued its letter ruling dismissing relator's application as moot after he was released from the juvenile detention center. Moreover, the record indicates that the trial court has not issued a ruling on relator's amended habeas corpus application. And to date, no hearing has been held on either of relator's habeas corpus applications. Further, more than three months have elapsed since relator was first detained and the trial court was informed of his complaints regarding the alleged unlawful restraints on his liberty.

Given the circumstances of this case, especially considering relator is a juvenile, the trial court did not conduct a hearing regarding the imposition of the conditions of release, and relator's liberty interest continues to be restrained to this day, we conclude that, only for the purposes of this case, a reasonable time period has elapsed for the trial court to consider and rule upon relator's habeas corpus applications. *See In re Blakeney*, 254 S.W.3d at 663; *In re Keeter*, 134 S.W.3d at 253; *In re Chavez*, 62 S.W.3d at 228; *see also In re B.W.*, 313 S.W.3d 818, 820 (Tex. 2010) ("One of the purposes of placing such jurisdiction in civil courts under the Family Code is to 'provide for the care, the protection, and the wholesome moral, mental, and physical development of children coming within its provisions.'") (quoting TEX. FAM. CODE ANN. § 51.01 (West 2008)

(providing also that the juvenile justice code is intended to treat, train, and rehabilitate children and remove, where appropriate, the taint of criminality from children committing certain unlawful acts)). Accordingly, under these circumstances, we find that the trial court abused its discretion in failing to consider and rule on relator's habeas corpus applications within a reasonable time. *See In re Blakeney*, 254 S.W.3d at 662-63; *see also In re Shredder Co., L.L.C.*, 225 S.W.3d at 679. Thus, we conclude that relator has proved his entitlement to mandamus relief.[6] *See In re Blakeney*, 254 S.W.3d at 662-63; *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135-36; *Walker*, 827 S.W.2d at 840.

## V. CONCLUSION

Because we have concluded that the trial court abused its discretion in failing to consider and rule on relator's habeas corpus applications within a reasonable time, we conditionally grant relator's petition for writ of mandamus. The writ will issue only if the trial court fails to consider and rule on relator's applications within twenty-one days of this opinion.

---

[6] At oral argument, the State argued, among other things, that relator did not prove entitlement to mandamus relief because he could present his habeas corpus application to another district court. *See In re Piper*, 105 S.W.3d 107, 109 (Tex. App.—Waco 2003, orig. proceeding); *In re Davis*, 990 S.W.2d 455, 457 (Tex. App.—Waco 1999, orig. proceeding). However, Texas courts have held that a "technically available legal remedy will not defeat a petitioner's entitlement to mandamus relief when the remedy is 'so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate.'" *In re Davis*, 990 S.W.2d at 457 (citing *State ex rel. Holmes v. Court of Appeals*, 885 S.W.2d 389, 394 (Tex. Crim. App. 1994) (quoting *Smith v. Flack*, 728 S.W.2d 784, 792 (Tex. Crim. App. 1987)); *Kozacki v. Knize*, 883 S.W.2d 760, 762 (Tex. App.—Waco 1994, orig. proceeding)); *see Ex parte Hargett*, 819 S.W.2d 866, 868 (Tex. Crim. App. 1991) (noting that, under proper circumstances, an applicant may pursue a writ of mandamus when the trial court refuses to consider a habeas application) (citing *Von Kolb v. Koehler*, 609 S.W.2d 654, 655-56 (Tex. App.—El Paso 1980, orig. proceeding)). We find that, under the circumstances in this case, requiring relator to present his habeas corpus applications to another district court would be too burdensome, slow, inconvenient, and ineffective as to be deemed inadequate; therefore, relator may pursue a writ of mandamus in this Court. *See In re Davis*, 990 S.W.2d at 457; *see also Kozacki*, 883 S.W.2d at 762.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Conditionally granted
Opinion delivered and filed February 15, 2012
[OT06]